FILED
99 FEB 12 PM 3:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

OPAL E. TILLMAN,              )
                              )
         Plaintiff,           )
                              )
vs.                           )   Case No. CV-98-TMP-737-NE
                              )
STEEL CITY HEATING & AIR, INC,)
                              )
         Defendant.           )

ENTERED
FEB 12 1999

MEMORANDUM OPINION

Defendant in this cause filed a motion for summary judgment on October 30, 1998, seeking dismissal of plaintiff's claims under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"). After briefing and argument, the motion is under submission, and the court[1] is of the opinion that it is due to be granted.

Plaintiff has asserted two claims: (1) that she was unlawfully terminated from her employment due to a "brief disability," in violation of the ADA, and (2) that she was unlawfully denied FMLA

---

[1] On December 16, 1998, the parties filed a joint consent to the exercise of final jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). The court's General Order for the Referral of Civil matters to the United States Magistrate Judges constituted the Order of Referral upon the filing of the joint consent by the parties.



leave she requested and was terminated from her employment because of her request for leave, both in violation of the FMLA. Defendant's motion argues that the ADA claim is due to be dismissed because plaintiff cannot establish that she had a covered disability under the Act and that the FMLA claim is defective because plaintiff was not able to return to work at the end of her twelve-week FMLA leave and, therefore, was no longer entitled to reinstatement.

## Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant

can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is

no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the

substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in her favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### Facts

Plaintiff was first employed with Defendant as a telemarketer in early 1996 while she was serving a sentence for a criminal conviction and awaiting a parole hearing.[2] Over the next year, plaintiff also worked as a dispatcher under the supervision of Don Haney and as a clerical-office worker under the supervision of Rae

---

[2] The fact of the conviction is important only because defendant argues that plaintiff had told various co-employees that she intended to work for defendant only until her parole was granted and she could move to Mobile. They proffer this as a legitimate, non-discriminatory reason for her termination. Because plaintiff denies having made such statements, there is a genuine issue of fact on this explanation which, at this stage, must be resolved in her favor.

Jean Flatt. Her work was satisfactory and there is no evidence that she was disciplined or otherwise regarded as a poor employee.

During the evening of March 17, 1997, plaintiff was walking back to the half-way house in which she resided when she tripped and fell over loose sidewalk concrete. She was taken by ambulance to a hospital where it was determined that she had bimalleolar fracture of her right ankle and a fracture of the arch in her left foot.[3] Surgery was required to set the right ankle and she was required to wear casts on both legs. She was hospitalized for almost two months.[4]

Her employer was aware of the accident soon afterward, and a number of plaintiff's co-employees came to visit her in the hospital. Defendant does not dispute that it was aware that she was on leave due to her broken legs. In a report dated May 8, 1997, plaintiff's doctor explained that she remained totally disabled from the fractures "and will most likely be totally disabled for another six weeks." On May 31, 1997, defendant delivered a letter to plaintiff, informing her that her employment

---

[3] Initially, plaintiff's left foot was believed only to be sprained, but when it did not improve, it was determined later to be fractured.

[4] Apparently despite her hospitalization, plaintiff was granted a parole following a hearing in April 1997. The record does not reveal whether she attended the parole hearing.

was terminated. The termination occurred ten weeks and five days after she suffered her injuries, but before the expiration of twelve weeks of leave. Plaintiff was not paid after the leave started, and there is no evidence regarding the nature, quality, or continuation of other employment benefits during that period.

In late June or early July, plaintiff was released by her doctor to return to work without any restrictions or limitations. By September, she obtained work with a new employer, but has changed jobs several times since. There is no evidence that she continues to suffer a permanent impairment.

### ADA Claim

At the hearing on the motion for summary judgment, plaintiff's counsel conceded that she could not establish an ADA claim. While counsel did not dismiss or withdraw the claim, he agreed that defendant is entitled to summary judgment on it.

Alternatively, it is clear that plaintiff cannot establish a "disability" covered by the Act. While it is true that two broken legs left her totally disabled for several months, it was not a permanent disability, but a non-chronic, temporary disability. Defendant correctly notes that the EEOC's regulations implementing the ADA exclude temporary impairments from the covered definition of disability. For example, the regulations state, "temporary,

non-chronic impairments of a short duration, with little or no permanent impact, are usually not disabilities. Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. Pt. 1630 App. § 1630.2(j); see also Vande Zande v. Wisconsin Department of Administration, 44 F.3d 538 (7th Cir. 1995)(broken leg not a disability covered by the ADA). Temporary, episodic impairments do not sufficiently limit a person's major life activities to qualify for disability coverage under the Act. Not every disability entitles a person to protection under the Act. It is only those disabilities that substantially limit a major life activity (such as walking, breathing, caring for oneself, and working) that qualify under the Act.

Thus, not only does plaintiff concede that she cannot proceed on her ADA claim, it is clear she cannot prevail because she has not suffered a disability protected by the Act. Defendant is entitled to summary judgment on this claim.

### FMLA Claim

Plaintiff also alleges that defendant violated her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., by refusing to allow her to take FMLA leave when she broke her legs, by terminating her employment before the expiration of twelve

weeks of leave, and by refusing to restore her to her previous job once she was released by her doctor to return to work. The court concludes that because she remained unable to return to work when twelve weeks of FMLA leave expired, she was not entitled to restoration to her job with defendant and, therefore, not covered by the protections of the FMLA.

In general terms the FMLA provides employees with the right to take up to twelve weeks of *unpaid* leave to deal with their own serious medical problems, those of family members, or for the birth or adoption of a child. Employees have the right under the Act to be returned to the same or a similar job position upon their return from leave, and they may not be subjected to adverse job actions because they have utilized the leave provided by the Act. To establish a prima facie case for a retaliatory violation of the FMLA, the plaintiff must show three things: (1) that she availed herself of a right protected by the FMLA; (2) that she thereafter suffered an adverse employment decision; and (3) that there was a causal connection between the exercise of the right under the FMLA and the adverse employment decision. <u>Dollar v. Shoney's, Inc.</u>, 981 F.Supp. 1417, 1420 (N.D. Ala. 1997)(<u>citing</u> <u>Morgan v. Hilti</u>, 108 F.3d 1319, 1325 (10th Cir. 1997)). Once a prima facie case of discrimination under the FMLA is established, the burden of

articulating a legitimate, non-discriminatory reason for the contested employment action shifts to the employer. If such a reason is articulated by the defendant, the burden then rests on the plaintiff to show by a preponderance of the evidence that the articulated reason is a pretext for unlawful discrimination.

While the Act authorizes an employee to take twelve weeks of unpaid leave, an employee who is unable to return to work at the end of the leave period is not entitled to have the job held open for an indefinite period or to require that he or she be restored to the job some period of time after the leave ends. EEOC implementing regulations state unambiguously that if, at the end of the twelve weeks' leave, the employee "is unable to perform an essential function of the position because of a physical or mental condition, including continuation of a serious health condition, the employee has no right to restoration" to the job. 29 C.F.R. § 825.214(b); See also Parker v. Sony Pictures Entertainment, Inc., 19 F.Supp. 2d 141, 153 (S.D.N.Y., 1998); Beckendorf v. Schwegmann Giant Super Markets, Inc., 1997 U.S. Dist. LEXIS 5693 (E.D. La. 1997); Soodman v. Wildman, Harrold, Allen & Dixon, 1997 U.S. Dist. LEXIS 1495 (N.D. Ill. 1997); Urbano v. Continental Airlines, Inc., 1996 U.S. Dist. LEXIS 20412 (S.D. Tex. 1996). In Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775 (6th Cir. 1998), the Sixth Circuit Court of Appeals found that when the

employee clearly remains unable to return to work when the FMLA leave expires, she is not entitled to restoration to her job and, further, that it does not matter that her employment was terminated before the expiration of the unpaid leave. The court explained:

> It is undisputed that on February 12, 1994, [the date FMLA leave expired] Cehrs was still unable to work. Cehrs argues that Northeast back-dated her termination to January 20, 1994. Northeast disputes this assertion and claims that Cehrs was fired as of February 28, 1994. *Regardless of which date is correct, Cehrs was clearly unable to return to work within the period provided by the FMLA.* As the district court noted, "it would be elevating form over substance to say that the effective termination date chosen by [Northeast] is meaningful to the Court's analysis under the FMLA."

Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 784-785 (6th Cir. 1998)(emphasis supplied). Thus, because the FMLA provides only for twelve weeks of leave, any leave that of necessity is longer than that cannot be FMLA leave. If the serious medical condition that initially prompted the need for leave continues to disable the employee from working when the leave period expires, the FMLA becomes essentially irrelevant.

In this case, it is undisputed that plaintiff first availed herself of FMLA leave immediately after she fell and broke her legs on March 17, 1997. Twelve weeks of *unpaid* leave would continue to June 9, 1997, yet she was notified on May 31, 1997, that her employment was terminated. Nonetheless, it is also undisputed that on June 9, 1997, she continued to be totally disabled and unable to

return to work. As noted, on May 8, 1997, plaintiff's physician expressed the opinion that she would "most likely be totally disabled for another six weeks," which stretched to the latter part of June. Even plaintiff does not contend that she was able to work on June 9, 1997. The most favorable view of her testimony is that she was able to return to work "after June." Because she was not able to return to work on June 9, 1997, when the FMLA leave period expired, she was not then and is not now entitled to restoration to her job with defendant. The FMLA does not require an employer to allow an employee to take more than twelve weeks, and, thus, if the employee cannot perform the job at the end of twelve weeks' leave, the FMLA provides no remedy or cause of action against the employer for terminating the employment.

It also does not matter that the termination occurred a week and half prior to the expiration of the FMLA leave when it was clear that the employee would not be able to return to work at the end of the leave period. Because FMLA leave is *unpaid* leave, early termination does not deprive the employee of any pay or other job benefits or protections for the short period of time left before the end of the leave. To wait another few days to discharge the plaintiff, when it was clear she would not be able to come back to work when the leave ended, would provide her with no substantive

benefits. She lost no pay, no entitlement to reinstatement, or any other job benefit simply because her termination occurred on May 31 rather than June 9, when the FMLA leave period expired. Certainly, the early termination did not deprived her of any rights under the FMLA. In the words of the Sixth Circuit, to hold otherwise would be to "elevate form over substance." <u>Cehrs v. Northeast Ohio Alzheimer's Research Center</u>, 155 F.3d 775, 785 (6th Cir. 1998).

Finally, it also does not matter that defendant refused to allow plaintiff to fill-out medical leave forms in order to invoke her rights under the FMLA. Such medical leave forms serve only the purpose of notifying the employer that the employee is taking leave under the FMLA. As long as the employer understands that, whether or not the request is made in writing, the notice requirement is met. There is no independent right under the FMLA to "fill-out medical forms" which can form the legal basis for a cause of action. While an employer may not evade notice that an employee is taking FMLA leave by preventing the employee from filling-out leave forms, denial of the opportunity to do so does not create an independent right of action against the employer under the FMLA.

Because plaintiff was not able to return to work on June 9, 1997, when her right to leave under the FMLA ended, she had no job-

restoration rights under the FMLA. Further, where her inability to return to work upon the expiration of FMLA leave was clear, defendant did not violate the FMLA by terminating her employment a week and a half early, nor was she deprived of any pay, compensation, or other benefits because of the early dismissal. Finally, because the denial of the opportunity to fill-out medical leave slips did not ultimately deprive plaintiff of any right under the FMLA, it is not actionable. Defendant is entitled to summary judgment on plaintiff's FMLA claim.

## Conclusion

The court concludes that there are no genuine issues of material fact and that defendant Steel City Heating & Air, Inc., is entitled to judgment as a matter of law. By separate order the court will grant summary judgment to defendant and dismiss this action with prejudice.

DATED this 12th day of February, 1999.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE